UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 25-212 (RC) |
| ) | |
| v. ) | |
| ) | VIOLATION: |
| WILLIAM PAIGE, ) | |
| ) | Count 1: 18 U.S.C. § 1349 |
| Defendant ) | (Conspiracy to Commit Bank Fraud) |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

Defendant William Paige agrees to admit guilt and enter a plea of guilty to Count One of the Information, which charges Paige with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349. Pursuant to Federal Rule of Criminal Procedure 11, the Government and Paige, with concurrence of his attorney, agree and stipulate that the Government would prove the following facts at trial beyond a reasonable doubt:

### Background

*Relevant Persons*

1. Defendant **William Paige** ("Paige") was a resident of Maryland and the owner and operator of We Da People LLC and The Paige Group Inc.

2. Kelly Winston ("Winston") was a resident of Maryland and employed as an accountant for several businesses under the control of Allieu Kamara that operated in the District of Columbia.

3. Allieu Kamara ("Kamara") was a resident of Maryland and operated several businesses in the District of Columbia that provide services to the District.

*Relevant Entities*

4. We Da People LLC ("We Da People") was a Limited Liability Company registered in Maryland on July 22, 2019.

5. The Paige Group Inc. ("The Paige Group") was a corporation registered in Maryland on July 22, 2019.

6. Capital Bank, N.A. ("Capital Bank") is a financial institution insured by the Federal Deposit Insurance Corporation.

### *The Small Business Administration*

7. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

### *The Paycheck Protection Program*

8. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

9. In order to obtain a PPP loan, a qualifying business must have submitted a PPP loan application, which is signed by an authorized representative of the business. The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant must state, among other things, its: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must have provided documentation showing their payroll expenses. To qualify for eligibility, businesses that applied for a PPP loan needed to be in operation as of February 15, 2020.

10. A PPP loan application must have been processed by a participating financial institution (the lender). If a PPP loan application was approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

11. PPP loan proceeds must have been used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

12. On December 27, 2020, the Economic Aid to Hard-Hit Small Business, Nonprofits and Venues Act provided additional funding for the PPP and extended the application deadline to March 31, 2021. The act enables borrowers to take a second draw PPP loan under the same general terms as their first PPP loan up to a maximum loan amount of $2 million. The act reopened the program to borrowers who did not previously receive a first draw PPP loan. To be eligible for a second draw, borrowers must employ no more than 300 employees, demonstrate a 25% reduction in gross receipts during a calendar quarter in 2020, and have expended the full amount of their initial PPP loan. Allowable expenses were expanded to include worker protection costs related to COVID-19, uninsured property damage costs caused by looting or vandalism during 2020, and certain supplier costs and expenses for operations. The expansion applies retroactively to first draw PPP loans that have not been forgiven by the SBA.

13. On March 25, 2021, the PPP Extension Act of 2021 extended the application deadline from March 31, 2021, to May 31, 2021. In addition to extending the PPP application

filing window by 60 days, the Extension Act provided an extra 30 days for the SBA to finish processing applications received by the May 31, 2021, deadline.

## Bank Fraud Conspiracy

14. In January 2021, Kamara approached **Paige** to ask if he wanted to apply, with Kamara's assistance, for a PPP loan in the name of We Da People and The Paige Group.

15. Kamara and **Paige** agreed that Kamara would receive a portion of the PPP funds if the loan applications were approved and funded.

16. In January 2021, **Paige** provided Kamara with basic information for We Da People and The Paige Group, including the business licenses, Internal Revenue Service Employer Identification Numbers, and the Articles of Incorporation. At Kamara's request, Winston then created a PPP loan application for We Da People and The Paige Group containing materially false statements. For We Da People, the materially false statements included that We Da People had 19 employees and an average monthly payroll of $113,692.23, when in fact it had no employees other than **Paige** and his wife and payroll that was a fraction of the amount claimed. For The Paige Group, the materially false statements included that The Paige Group had 19 employees and an average monthly payroll of $112,499.50, when in fact it had no employees other than **Paige** and his wife and payroll that was a fraction of the amount claimed. In addition, Winston created false and fraudulent supporting documents to submit with both loan applications, including: false financial payroll reports for 2020 and false Employer's Quarterly Federal Tax Return (Forms 941), for each quarter of 2020. All of these documents were provided through an online portal to Capital Bank.

17. On January 26, 2021, **Paige** e-signed the PPP loan application for We Da People in his wife's name and it was submitted to Capital Bank. The PPP loan application sought a $284,230.57 loan. **Paige** understood that the application and supporting documentation given to

him by Kamara had been prepared by Winston, even though neither Kamara, nor Winston, requested, or received any payroll information that would be necessary to submit a complete and accurate PPP loan application for We Da People.

18. On March 14, 2021, **Paige** e-signed the PPP loan application for The Paige Group in his name and it was submitted to Capital Bank. The PPP loan application sought a $281,248.75 loan. **Paige** understood that the application and supporting documentation given to him by Kamara had been prepared by Winston, even though neither Kamara, nor Winston, requested, or received any payroll information that would be necessary to submit a complete and accurate PPP loan application for The Paige Group.

19. On February 18, 2021, the SBA and Capital Bank approved **Paige's** fraudulent PPP loan application for We Da People and funded the loan in amount of $284,230.57. On February 18, 2021, the SBA and Capital Bank deposited $284,230.57 into We Da People's Capital Bank account ending in -4824.

20. On February 19, 2021, **Paige** wired the full loan amount—$284,230.57—from We Da People's Capital Bank account ending in -4824 to We Da People's Truist Bank account ending in -1405.

21. On February 23, 2021, **Paige** wired $55,000 from We Da People's Truist Bank account ending in -1405 to Kamara's account at Bank of America, N.A. ("BOA") ending in -5772.

22. On March 18, 2021, the SBA and Capital Bank approved **Paige's** fraudulent PPP loan application for The Paige Group and funded the loan in the amount of $281,248.75. On March 22, 2021, the SBA and Capital Bank deposited $281,248.75 into The Paige Group's Capital Bank account ending in -8238.

23. On March 22, 2021, **Paige** wired the full loan amount—$281,248.75—from The Paige Group's Capital Bank account ending in -8238 to The Paige Group's Truist Bank account ending in -1413.

24. On March 23, 2021, **Paige** wired $100,000 from The Paige Group's Truist Bank account ending in -1413 to Kamara's account at BOA ending in -5772.

25. On June 8, 2021, **Paige** forwarded Kamara emails containing links to Capital Bank's PPP loan forgiveness application to apply on behalf of We Da People and The Paige Group.

26. At the behest of Kamara, Winston prepared a loan forgiveness application for We Da People. The application falsely claimed that We Da People had 19 employees at the time **Paige** received the PPP loan and at the time of the forgiveness application. The application also falsely claimed that, for the period of February 18, 2021, through May 7, 2021, We Da People spent $326,983.59 on payroll costs.

27. On December 6, 2021, **Paige** e-signed and submitted the loan forgiveness application for We Da People in the name of his wife.

28. As a result of the false loan forgiveness application, submission and supporting documentation, Capital Bank and the SBA forgave We Da People's PPP loan.

29. At the behest of Kamara, Winston also prepared a loan forgiveness application for The Paige Group. The application falsely claimed that The Paige Group had 19 employees at the time **Paige** received the PPP loan and at the time of the forgiveness application. The application also falsely claimed that, for the period of March 22, 2021, through June 15, 2021, The Paige Group spent $327,392.73 on payroll costs.

30. On March 1, 2022, **Paige** e-signed and submitted the loan forgiveness application for the Paige Group in his own name.

31. As a result of the false loan forgiveness application, submission and supporting documentation, Capital Bank and the SBA forgave The Paige Group's PPP loan.

32. Overall, with respect to We Da People and The Paige Group, Capital Bank and SBA lost a total of $565,479.32.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ Joshua Gold*
Joshua A. Gold
Assistant United States Attorney
Tx Bar No. 24103101

DATED: June 12, 2025

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I have read every word of this Statement of the Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 8/20/25

_____
William Paige
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 08/12/2025

_____
Daniel Suleiman, Esq.
Funmi Anifowoshe-Manning, Esq.
Counsel for Defendant William Paige